All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Please be seated. Our first case for argument today is 23-2027, Centripetal Network v. Palo Alto Networks. Mr. Clement, please proceed. Thank you, Your Honors, and may it please the Court, I'm going to endeavor to leave three minutes for rebuttal. Mr. Clement, before you start, can I just note, you are a very experienced practitioner. The rhetoric in the blue brief was a little bit much for me. I'm a little disappointed in the tone of this brief. Well, I'm sorry you had that reaction, Your Honor, but frankly, my client's pretty disappointed by the way they've been treated throughout this. Yes, but you're a very experienced appellate advocate, and you know we are not a jury, and we don't appreciate that kind of rhetoric. Your strength is in your arguments, not that kind of tone and substance. So I would hope that you appear before us many times, and you are an excellent advocate. I would hope you would not sign on to a brief like this ever again. Well, I'm not sure I can make that promise, Your Honor, because with all due respect, I think what happened in this case was not appropriate. I think given what happened to my client before this court in the first Cisco against Centripetal case, at a minimum, when they asked for recusal for the APJs that had a greater interest, at least potentially three times as much, I think they at least deserved respectful consideration, and I don't think they got that. But we can disagree about the rhetoric in the brief, but I don't think we can disagree that there was a double standard applied here that is highly problematic. I'm going to let you get on with your argument, but I can't leave my colleague hanging out there. The rhetoric in the brief was something about which we all unanimously agreed in advance. Judge Hughes just agreed to be the one to make mention of it. It's not meant to derail your argument, and it's not going to take away from the strength of your argument. It's just the tone, but please proceed. I will, and I will try to proceed in measured tones, but I have to say as somebody who has seen a lot of government proceedings, I do think the way these proceedings went and the way that my client was treated was highly inappropriate because I do think there is a responsibility that APJs have, that judges have. Nobody likes to be told that they should recuse, but I do think there's a responsibility to handle those with respect. Rhetoric aside, I think the substance here is, I mean, this is quite a remarkable situation if you think about what has happened to my client. They're first told that there is both the appearance and reality of impropriety when a judge that adjudicates their claim holds less than $5,000 in Cisco stock. It's actually their wife. Counsel, do you agree that there is a different statutory obligation on Article III judges versus the rules applicable to APJs in terms of your recusal argument? I think there is a different statutory regime that applies. I think ultimately the Due Process Clause applies to both, and I think that given the unique function of APJs, which is different from most government executive branch employees and is different from ALJs, I think in those circumstances, I think to simply proceed on the assumption that the same standard that applies to the executive branch employees applies no differently to the APJs, who can essentially have the same effect on the patent as the Article III judges. They can invalidate it. The effects on a patent holder are absolutely devastating, and under those circumstances, it seems to me that the same standards, the basic same standards ought to apply even if the regimes are differently. And, of course, the remarkable thing here is the PTO now agrees with us. They have now for every other case. Counsel, so the regulation clearly permits what happened in this case. There's just no question about that, correct? I mean, I think as amended, the better reading of it seems to be that it allows what happened here. Yes. So the regulation permits what happened. So are you challenging the regulation sort of like in an applied way or sort of as a across-the-board this should be rendered unconstitutional for violating due process? What is the precise nature of your challenge since the regulation does read on this case? How is it precisely? I should understand the contour of your argument. So I think there's kind of three aspects to the argument you should understand. First, there's an as-applied due process challenge to the regs as applied to this case in these circumstances. Second, our challenge here was not limited just to the stock ownership but the whole way that this case was handled, including the reaction to the recusal motions, including the decision to allow the joinder of Cisco and only after that was allowed to recuse. And then there's also what you might think of as almost like a class-of-one type aspect to this, which is once the last shoe drops and the PTO makes clear that because of, among other things, appearance of impropriety problems, this is never going to happen to another litigant. So can I understand that your argument is very narrow in that it is in the facts of this case, given all of the exact proceedings that took place, you think there was a due process violation here, not that you are challenging the idea of a de minimis exception for federal employees or even, wait, a de minimis exception for federal employees who are charged with general adjudicative tasks, right? Because, of course, adjudication is rendered throughout the government, right? MSPB, EPA. I mean, there's so many adjudicative boards within Article I that it seems like it would be a tough challenge for us to have to parse based on job description, for example. Do you follow what I'm saying? So I'm just trying to understand how broad your argument is. How far do you need me to go for you to prevail? I don't need you to go further than this case and, you know, the circumstances where the litigant has already run into a stock ownership problem in the Article III courts and is now facing, essentially, an effort to invalidate the same patent. I mean, you could decide it that narrowly. I think, in fairness, the principle that we're applying should apply to all of the APJs. I don't think there's going to be any real consequence for whether you decided it's to my client or you decided it's to all APJs because going forward— Well, then what about all the AJs? Social Security Administration. I mean, come on. You know how many AJs there are in the federal government? There are quite a few, and I don't think I would really go further than the APJs. Why? Because there's more money at stake or because it's your client or why? What justification could there possibly be? Somebody's social security benefits could be their entire livelihood. The impact on an individual could be more profound even than the impact on your client measured in scale. So why would it not extend to APJs too? I think what's different about APJs than other standard ALJs is most other ALJs are doing things where there isn't a direct analog in the Article III courts. Obviously, public rights, private rights help reinforce that basic division. APJs are in a different situation. They're not just dealing with sort of benefits and benefits distribution, which is something that's historically been done in the executive branch. They're basically taking a validly issued patent, and they're making it go poof. And that's something that otherwise happens in the Article III courts, and it just seems given that grave responsibility. And again, PTO now agrees with me. They ought to be subjected to a higher standard than garden-variety executive branch employees and also ALJs, generally speaking. As important as I think the recusal issue is here, I do want to make sure I have time to talk about the merits, so to speak, as well. So let me do that. I think there was a fundamental procedural error here backed by a fundamental substantive error. The fundamental procedural error here is that the board injected issues into this case that were just not the issues that were in the original petition. They're not the issues that the petitioner raised in this case before the board. The real dispute before the board that the parties joined was not whether the 856 patent operated on unencrypted packets. The real question was whether the prior art did that, and that's where the parties joined issue. And then all of a sudden what I think is quite clear that the board did is they essentially looked at our patent and particularly the parts of our patent that talked about the technology and the filtering applying to encrypted packets. And as to that specific thing, they said that, you know, that was part of an amendment that came through. We think the amendment was in error, and we effectively don't even really think we understand how that even happens. And so what they essentially did is said there's a part of this patent that's critical. It's the part of the patent that distinguishes it from the prior art, and as to that aspect of the patent. Mr. Clement, are you going now to help me ground myself to your written description argument that the board crossed a line by basically making a written description argument during the IPR? Is that the argument? I'm just trying to ground myself in which of the arguments we're on right now. So, I mean, I am on that argument, but that argument has both a procedural component and a substantive component. Even if you didn't agree with me on the substantive aspect of that, though, I think you should. The procedural aspect of that is itself an APA violation, raises some of the, you know, the same questions that this court has recognized in cases like Qualcomm, where the board is injecting issues sui sponte, which is inconsistent with basic APA procedure and is particularly problematic after the Supreme Court's SAS decision, which makes clear that the focus has to be on the petition and the petitioner's argument. So, counsel, I just want to take you to another area given the time. I am potentially sympathetic to the argument that the copying evidence wasn't properly considered. So, let's say, hypothetically, we were to agree with you that there was an error there. What sort of relief would you seek if we disagree that reversal is the right answer? Well, I think under those circumstances, you would vacate the decision, you would remand it, and I think given the recusal issues, you could certainly specify on remand that the new panel should be assigned consistent with the prospective PTO guidance. And in that sense, by finding a defect with the board's proceedings, you could effectively remedy the recusal issues without having to decide whether it's a due process. So there's, you know, you could think of that as constitutional avoidance, if you will. But I think there's a way in which if you... I wasn't expecting that answer. Let me also ask you a follow-up question, because my understanding is, initially you had concerns with two out of three of the APJs that were on the, what one would call the institution decision. Is that accurate? No, we had a problem with all three, because we thought that all three... We had a principal problem with APJ McNamara, and then we cited to all of the panel members, citing relying on the Williams case from the Supreme Court, that all three of them essentially should recuse under the circumstances. So we had a problem with all three. Wait, so is it your view that, suppose that among the three of us, it turns out that Judge Hughes found later he needed to recuse himself? Is it your view that Judge Cunningham and I would also have to recuse just by sort of osmosis, being close to him? What's the reasoning? I think that is the thrust of the Williams decision, and that's certainly the way that we sort of briefed it to the three judges on the APJ panel. And I think that... Are you familiar with any regional courts that apply the rule that way? Because we've had lots of instances where judges have... Where, you know, some sort of conflict has come up. Like, I mean, when it comes to staffs, I mean, one of the difficult things is sometimes if you own stock in something, you don't appreciate all the wholly owned subsidiaries that that overarching entity might have, and all of a sudden it's brought to your attention that, oh, you know, you have, like, stock in something related to this company, and that judge recuses. We don't have a historical practice of saying the whole panel has to recuse at that point. So are you saying that the court's process, which I think is ingrained pretty regularly and occurs with some frequency and I believe is consistent with what I know to happen at the D.C. Circuit and other places, are you saying that we are all acting in a way that is either illegal, unlawful, unconstitutional? What are we doing here? Like, this seems important to me. Yeah. I mean, I think the Williams case suggests that you might want to reconsider that practice. Maybe you can draw distinctions between Article III judges and APJs. I mean, you know, it's, in my understanding, there are something like 250 APJs. It's a little easier to substitute those out than it is to substitute out an entire panel of, you know, the court. But, you know, the thrust of the Williams decision does seem to suggest that having just one conflicted judge, there was a justice, does inflict, in fact, the whole process. I just want to finish on the written description thing and try to save 30 seconds at least for rebuttal. We'll give you more time. I appreciate that, Your Honor. I think on the written description thing, I think this is really critical here because everybody agrees that the board can't do written description as such, can't invalidate on the basis of written description. But if the board then confronts a patent and it thinks there is a written description problem with an aspect of the patent that distinguishes it from the prior art, I think the Samsung decision of this court teaches very clearly that you cannot invalidate the patent for obviousness under those circumstances with a two-step process where you ignore the written description and you ignore the part of the patent that you think has a written description problem and then say the rest of the patent is obvious. We have some canons of construction though, you know, when it comes to claim construction. And one of them is that the person who is construing a patent claim should construe it in order to preserve its validity if possible, right? You know, if it's subject to multiple possible constructions. Now, you can't read limitations in to save a patent, right, that is otherwise not salvageable. But if it is subject to multiple possible constructions, you choose the one that would conform with validity. Is it possible that's what the board was doing here? Well, to reach an invalidity determination, I don't think so with all due respect, Your Honor. I mean there's more than one way to invalidate a patent. And to just save it just enough so you can invalidate it on the basis of obviousness, I don't think it's a permissible move. And I think that is particularly informed by the constraints that are on the board in an IPR proceeding. There are plenty of other proceedings where the board can consider 112 defects but they expressly can't do that in an IPR proceeding. But can't they consider the disclosure? In fact, aren't they – isn't that the primary source for construing patent claims is the specification? They can consider the specification. But what they can't do is say – which is what they did here is, okay, I see what happened here. This language was added as an amendment. We think the amendment was in error. And then we also think that this amendment teaches or discloses applying the filtering to encrypted messages. And we think that that's just not possible. We don't understand how that would work. And then the rest of the board's opinion sort of proceeds on the assumption that like those restrictions aren't there. And I'm sure it's frustrating for the board if they think, okay, I'm looking at this patent and I see the very thing that distinguishes it from prior art. And I don't really think that that's enabled or I think there's a written description problem there. I'm sure it's frustrating for them. But I also think Samsung is crystal clear that you can't act on that frustration. And you just have to say under those circumstances, we can't invalidate these claims on the basis of obviousness or any of the other factors that are available to us under IPR. And maybe someday some court is going to look at that and decide that there's a 112 problem. I mean to be clear, I don't think there is a 112 problem at all. So I want that to be as crystal clear on the record as possible. But if the board thinks that and they think, well, here's the thing that distinguishes this from prior art and we're going to essentially ignore that, I don't think that's an available option. Okay. One final question though. Just on the remedy point going back to your suggestion that you would need to – you'd recommend that we have an opinion that says substitute out APJs. Are you saying that for all three APJs that were on the final written decision? Or what are you contending in terms of which ones you think would need to be substituted out for the arguments you've been making to us? So I think all three would be substituted out. I think, like I said, if you find any problem with this and vacate it, I think this problem will sort of solve itself because as long as they're applying the new PTO guidance to cases on remand, which I assume they would, then presumably we're going to get a panel. No, but that's not true because the one judge who wrote the opinion in this case has no stock. And so even if they're applying the new rules, you could well go right back to him. Well, I would hope that under all the facts and circumstances here, and I guess then I would rely on my Williams-based argument, that there's a basis for recusal for APJ Moore as well. And you'd just make that argument back to the PTO then? Again, I would hope maybe I don't have to, but we'll see. Okay. Thank you, counsel. Let's hear from – who do I have first? Do I have the government or who do I have coming up first? I have planned to go first, Your Honor. Okay, good. But if you want to hear from the government, that's fine too. No, that's fine. That's fine. All right. Yeah, actually, give me the government first. Sorry. Sit back down. Good morning, Your Honors, and may it please the Court. Brian Springer on behalf of the federal government. I'd just like to take a step back and put the regulations, the ethics regulations in context here. This case involves an administrative proceeding that was initiated by Palo Alto Networks to challenge a patent owned by Centripetal Networks. APJ McNamara participated at an early stage of that proceeding, and he held Cisco stock in an amount that's less than the threshold set by directly applicable ethics regulations. And then after Cisco was joined to the proceeding in a backup role, APJ McNamara promptly withdrew from the case to allow a three-judge panel, who undisputedly have no pecuniary interest or conflict in the matter, to consider the evidence and render a final written decision on the merits of Palo Alto's challenge. And I think that Centripetal's argument here that the entire proceeding has to be unwound and start from scratch misunderstands the ethics rules and omits key facts that are relevant to the analysis. Can I just follow up on the line of questioning I was asking opposing counsel in particular there? Let's say that we think it needs to be remanded hypothetically to address the copying evidence, for example. What would happen as a practical matter at the PTO then in terms of the constitution of the panel that would address a remand? Who would that be? Sharon, I think the PTO would need to make that decision if the case went back. As I think the discussion this morning has highlighted, Judge APJ Moore, there's no suggestion that he has any pecuniary interest in this case or any other conflict in the matter. He sat with two other judges who also undisputedly have no conflict in the matter, and they reached an independent judgment based on the facts and evidence in the record. So I think if the case were to go back on some other issue, the PTO should be the one to make the decision of which APJs should sit on this panel. Just to be clear, there isn't a process. So at the Federal Circuit, we have a whole process if a case comes back again in terms of trying to have the same panelists for efficiency purposes be involved in that case. There's not a similar process at the PTO, is there? I mean, I think I know the answer. I think the director gets to constitute the panels however he or she wishes. Is that true? Your Honor, I don't know the specifics. I believe that is correct. And here, my understanding is at least sort of as a matter of course it would go back to the same panel. There may need to be a decision here if different APJs should take over. But again, as I mentioned, there's no reason to think that any of the APJs who rendered the final written decision have any conflict in this matter and should be recused off of this case. But at least one APJ who's alleged to have a conflict, at least an appearance of impropriety if not actual impropriety, participated in the decision to institute this proceeding. I mean, there is a threshold you have to get over before you even have a proceeding. And so you have someone, whether he does or does not have an appearance of impropriety, let's put that to the side for now, because it's argued as an appearance. Mr. Clement stood here and said, yeah, technically under the rules that APJ is not in violation of the de minimis rules. So he acknowledged that, which he had to. But he's still arguing there's nonetheless an appearance of impropriety, especially given everything. So you had a judge who was involved in the choice to institute the proceeding who has an appearance of impropriety potentially, if we credit him. Shouldn't that be unwound? Your Honor, I don't think that that's the right way to think about this. The appearance of impropriety question here collapses with the more specific regulation that says that APJs can hold stock up to the amount that's specified in the regulation. Suppose I thought there was an appearance of impropriety. Let's just start with that. Suppose I thought there was. What would I do then? If I thought, yeah, there's an appearance of impropriety, should I unwind the entire institution decision? Because that person with an appearance of impropriety participated in a decision. Your Honor, I mean, again, I don't want to sort of fight the premise here. I mean, I don't think that the question here is about the appearance of impropriety. It's whether or not the de minimis regulations apply. But even assuming that you thought that there was some ethical problem that affected the final written decision, I think it would be. I don't even understand that answer. The regulations do have an expressed de minimis, but they also have a separate appearance of impropriety condition. So clearly you could have an appearance of impropriety that causes the need for you to recuse yourself, right? Sure, Your Honor. I think there's two points that are important here. One is that the regulation that Sentripetal is pointing to that talks about the appearance of partiality is one that's about personal and business relationships. It's separate from the regulation that specifically talks about personally held stock. And that regulation, as well as many of the other regulations that Sentripetal is pointing to, point back to the security holdings exemption. Because that is a circumstance in which the Office of Government Ethics has made the determination that the interest at issue is so remote and so inconsequential that it won't affect the integrity of the proceeding itself. So are you saying the appearance of impropriety provision does not ever read upon the de minimis provision? That the de minimis provision, you are free and clear of the de minimis provision no matter what? This regulatory scheme creates a process by which you can never have an appearance of impropriety even as long as you're within that de minimis amount. Your Honor, if the only basis that is being asserted for recusal is one about stock ownership, then you look to the stock exemption provision. If there are other reasons to think that there may be effects outside, then it is possible that the appearance of impropriety section would kick in. So wait, so let me be very clear. Are you saying the appearance of impropriety section can never read on, can never be affected by someone who is being considered under that de minimis category? Your Honor, OGE has said that this is what determines whether or not there's an appearance of impropriety. They have said that if an APJ or another government officer who is covered by these regulations holds $15,000 or less in a party to a particular matter, that that satisfies. For stock ownership, right? Just based on the sheer fact of ownership. If that APJ sends an email to their partner saying, woohoo, I'm on a case that is going to either increase or decrease the value of our Cisco stock, even though that's related to the stock ownership, that would be a separate basis for impropriety, right? That's correct, Your Honor. If there was some other basis to assert a conflict, the appearance of impropriety section might kick in where we're just talking about the ownership of stock. And you don't think that that could apply here? Don't worry about the time, okay? Don't worry about the time. I'm going to give you lots of time. But you don't think that could apply here where we're talking about a $3.2 billion judgment in a related district court proceeding that could be affected by what is done here? So, I mean, I don't know what $3.2 billion could do to Cisco stock, but it's got to be something. And, I mean, I don't know how many shares this APJ has. It's not many. I know it's not many because he's under that threshold. But you're talking about a $3.2 billion judgment. I mean, that's a really big number. That doesn't matter? That doesn't affect anything? So, Your Honor, I would point you to, if you look at the specific securities exemption regulation, and particularly subsection B, which is about non-parties, there's an example that's given in that situation where it talks about an employee who's deciding whether to approve a drug for a particular company that would compete with another company where that employee owns stock. And what it says is that in that circumstance, the employee can have up to $25,000. I think that looks very similar to what we have here. It may be that a decision in this case would have affected a company that when APJ McNamara was making the institution decision, it may have affected a company in which he owned a small amount of stock. But these regulations are very explicit that they apply, and they're designed that way. They're supposed to make it easy for executive employees like APJs to make the decision about whether they can participate in particular matters without having to ask sort of ephemeral questions. They can look at their stock ownership and see if it's below the threshold that's set by these regulations. Can I get you now to pivot and address Williams? Mr. Clement was very careful each time he talked about Williams to say the, quote, thrust of Williams. I believe the thrust word was used three times. And I think that there's probably a reason that he's characterizing it that way. Because it does seem to me, if he's right about Williams, there are a lot of appellate courts in the country that probably have some constitutionally infirmed decisions out there. Because when one judge recuses themselves, it doesn't necessarily cause the other two judges on that panel to recuse themselves. We, as a matter of process, usually substitute in a different judge just for the recusal person. So can you help me understand his Williams argument? Sure. I don't read Williams to say that if there's someone on a panel who has a conflict, automatically all the other judges, you know, that that conflict is attributed to them. I mean, for one thing, the case of Williams is very different than this case. In Williams, it was a situation where the justice on the Supreme Court had early participated in the exact same case. That person had, you know, that justice had previously authorized the death penalty against the litigant that was then before the state Supreme Court. And the Supreme Court said that the justice, because of his earlier participation in the case, might be psychologically wedded to his decision to grant relief or not grant relief. And in the discussion of remedy, what the Supreme Court noted was that it is true that the other justices on the panel may have been exposed to this justice, but that it was okay for it to go back to the other justices to render an independent decision looking at the facts themselves. And here we have no asserted conflict, you know, by itself, either a financial stake or another basis for conflict of the three APJs who rendered a final decision. The director of the PTO has now stepped in and said, you know what, we're just not going to have any more board judges who owns any stock at all. I mean, that sort of helps, doesn't it? The claim here that there is potentially an appearance of impropriety with adjudicators holding stock in a case in which they're participating as an adjudicator. You know, I don't think it helps the claim here because the claim here is about what the ethics regulations do or don't say. And the PTO guidance, which is a paneling procedure, was very explicit that it was going beyond what is required by the ethics regulations and not calling into question anything that happened before that was an application of the specific, you know, particularly the securities regulations that we have at issue here. Can you just briefly address what I saw was a jurisdictional argument raised in terms of what we could do with respect to the institution decision as opposed to what we might do with respect to the final written decision? So, Your Honor, we haven't taken a specific position on that and we haven't been authorized to take a position on that. We haven't disputed that if the court thought that there was some ethical problem that affected the final written decision, this court could vacate the final written decision. But we haven't taken a position on what about if the court would need to go beyond that or could just do that and send it back to the PTO to make a decision about how to proceed. Can I just ask another question, which is sometimes we are asked to send things back to a different panel and not always because there is a letter of the law impropriety, but sometimes it's just an appearance of impropriety. Certainly, the decision in this case, to the extent that we commented on the appellant's brief, the decision in this case also reads quite strongly as written. Is it prudent that maybe three new sets of eyes, if this case goes back, should be assigned to it? And ought we to do that or just in the interest of prudence or ought the director to do that? I mean, is your argument going to be to me that we should leave that in the capable hands of the director? Your Honor, I think that this court should leave that in the hands of the agency to make that decision. I mean, I don't see that Centripetal has specifically asked for that relief. And again, I mean, I think the important point here is that there's no suggestion. I kind of think he asked for that relief. Maybe I'm wrong. Maybe the blue brief didn't technically ask for it, but it felt like he asked for that relief here, but maybe I'm mistaken. So if he did ask for that relief, what's your response? Your Honor, I still think it would be appropriate to allow the agency to make that decision in the first instance and decide whether or not there's any reason to move this to a different set of judges, particularly when all of the judges that sat on this panel are not even asserted to have their own conflict of interest. Unless there are any other questions. Thank you. May I proceed, Your Honor? Yep. Good morning. May it please the court. Mark Fleming on behalf of the appellees, and thank you very much to NC Central for its hospitality this morning. I would start, and I recognize I'm the only one on this side of the vehicle to talk about the patent merits, so I want to make sure I get to that. On the recusal issue, I think it's worth underscoring there is an alternative ground and basis for the board's decision here. And so in order to reverse the board's decision on the recusal issue, this court would have to find that it was an abuse of discretion for the board to find that Centripetal failed to timely raise this issue. And the facts here are important. On November 9th, 2022, Centripetal told the Supreme Court of the United States that it knew about APJ McNamara's stockholding, and it said, quote, has not explained why it waited from November 9th to December 30th, the Friday before the New Year's holiday, and four business days before the board faced a statutory deadline to bring this issue to the board without seeking authorization and without meeting and conferring with Palo Alto Networks. Well, I don't think that's actually a fair characterization. I think that in their reply brief after you raised this argument, Gray Brief pages 10 through 12, they did, in fact, explain that. They explained that they had to seek back copies of, I think, securities information about the judges, and they didn't have in a timely fashion all of the necessary information they had. At least that's what they say on Gray Brief's page 10 to 12. So to the extent that you said they didn't respond to it, I think that's inaccurate. Whether you don't like their response is a different question, but don't say they didn't respond to it because they did. Chief Judge Moore, they did not say that to the board, and certainly it's not a basis for finding of abuse of discretion on the part of the board to rely on something that comes up for the first time in the reply brief on appeal. But even taking those statements on their face, which I'm happy to do, they represent that they had what they were looking for by November 16th. That still leaves six weeks between November 16th and December 30th. Just out of curiosity, when you said they didn't make this argument to the board, was the board presented with this timeliness argument? Absolutely, and they relied on it in their decision. By whom? Who presented the time? And they didn't respond to that in the proceedings before the board? To my knowledge, I don't know what the response was, other than to say we needed time to get all the relevant disclosures, which, of course, they had by November 9th. That is a response, and they assert to us it was not until November 16th the Department of Commerce responded to Centripetal's request for additional disclosures and warned. I'm quoting from their page 10 to 12. If that is the same thing they argued to the board, it seems like they did argue this to the board. They did not argue November 16th to the board. I mean, I invite Mr. Clement to contradict me, but that is not something the board had ever heard. Well, since you're the only person that is going to actually talk about the patent issues, and we've had an awful lot of discussion about this, why don't you move to that? As far as I understand it, the written description argument depends on two assumptions, neither of which is correct. The first is that the board somehow found that the claims were limited to applying the filtering rules directly to encrypted packets, and the second is that the board somehow found that those claims were unsupported by written description. Neither of those is right. The board didn't reach a written description finding. It told you it didn't reach a written description finding in footnote 7. And the board expressly says that the patent does cover filtering encrypted packets by correlating them with unencrypted packets, and Centripetal does not deny this. They say on page 49 of their blue brief that their claims are that broad, and they do not require the rules to analyze the encrypted payload portion of the encrypted packets. They said the same thing to the board in their patent owner response on page 4631 of the appendix. So the question before the board was, does the Burugana-Hawley prior art reference disclose the claim limitation in all its breadth, or at least in some of its breadth, which is covering filtering encrypted packets by correlating them with unencrypted data in the handshake packets? And there's plenty of substantial evidence for the board's finding that it does that. Let's turn to the issue that Judge Cunningham asked a lot of questions about, which is, if the board did not properly consider the evidence of copying in the context of its obviousness analysis, what ought we to do with this case? I want to answer that. Well, I think the answer to the question as presented is, if this court concludes that the board did not correctly consider something and that it would make a difference, the outcome of the case, then obviously the court's practice is to vacate and remit. However, I would like to address the premise of the question, which is the notion that the board did not address the argument that Centripetal made with respect to copying, which it most certainly did. And I think in that regard, it's important to look at the argument that Centripetal actually made, which is on pages 4680 and 4681 of the appendix. This is the end of their patent owner response, pages 67 to 70. And it's very clear from this argument, and I invite the court, thank you for turning to it, that what Centripetal was arguing was that the board should defer to the finding of the district court in the Cisco case. And there is a 4680. Okay, no, they said that they talked about the district court case, and then they gave all the specific exhibits and the specific page numbers. And it does not amount to that much, actually. They didn't point to that many specific things. They sure as heck could have pointed to more, but they didn't. They only pointed to a few things. So I don't think that the characterization the board made about how it would have to go searching through 3,000 pages or more of evidence is at all accurate. They pointed at this very page to specific pages of the record, specific testimony that supported their claim of copying. The board didn't have to go on some hunting and pecking and fishing expedition. Fair enough, the board could have said, in these few pages you pointed to, I don't see a sufficient case. But that was one of the things that bothered me about the board's opinion. They just very flippantly, quite frankly, said, I'm not going to go fishing for this evidence. They didn't have to. The evidence is articulated right here in the brief that was filed, the particular pages of evidence. I think what the board was saying, if I may, is if you look at the sentence immediately preceding that string cite, it says, Petitioner ignores that the court in the Cisco litigation also found compelling evidence of copying and that the evidence of copying was public. And that the evidence of copying was public at the time it filed the petition. Exactly, right? There's an and. They're not just relying on the court finding. They're saying and, and here is all that evidence. And then there's a bunch of C4 examples. Now, fair enough. If the board, if the board wanted to say, I'm only going to. I know you said CEG, but these are the only ones I'm going to look at. I'm not going to go hunting and pecking through the rest of the record because this thing is too big and you had to put me on notice. But it had to at least address these, these specific pieces of evidence. So the centripetal did not put the entire record before the board. It didn't put any of the documents that supposedly reflected copying before the board. None of the trial exhibits were before the board. You're right, Your Honor. These particular handful of pages of trial transcript were filed with the board. The rest of the record on which the judge. They didn't have to, the judge doesn't, the board judges don't have to look at the rest of the record then. But they have to look at these pages. These specific pages were called out as presenting evidence of copying and they were given to the board. I think it is fair for the board to decide. I don't. Well, then if the court has made that determination, then I'm not going to quibble with it. It certainly is within the court's power to remand for further consideration. I think it would be a futile exercise, frankly, and I think the centripetal will presumably just appeal again. It would be a waste of the board's time and a waste of this court's time. But the court obviously has the authority to do it. I'm not going to say that you don't. I guess I don't think. Is that because you think the evidence of copying is insufficient to overcome the obviousness determination here? Absolutely, Your Honor. I mean, the board said that the Buruganahalli reference is essentially anticipatory. The only reason there was a second reference offered is because Buruganahalli doesn't expressly recite a proxy system by name. Here on appeal, centripetal doesn't deny that Buruganahalli does disclose routing to a proxy system. So we're talking about an anticipatory reference, essentially. And I think it would, and the board essentially said that even strong secondary considerations would not be sufficient to overcome a very strong case of obviousness. Where did they say that? On page 50 of the appendix, the final paragraph. For the reasons described above, we find that Buruganahalli presents a strong case of obviousness and in fact is essentially anticipatory, skipping down to the penultimate sentence. Thus, even if Pat Noner's objective evidence was strong, we would find it insufficient to establish an obviousness. We also find, however, that the evidence offered would be insufficient to overcome even a weak case of obviousness. So I think that makes very clear what the board would say on remand. Perhaps they could have said it more clearly. This court reviews judgments and not opinions. Again, I think it would be a futile exercise to remand on this record and force the board to go through it. Actually, this court doesn't read, you're completely wrong. We do not review judgments, not opinions in agency cases. We're bound by Chenery. We have to actually review opinions and rationales provided by the board. All Chenery means is that you cannot affirm on a ground not relied on by the board. But this is not a ground not relied on by the board. The board considered the copying evidence and determined that it would not overcome the very strong case of obviousness that was shown. It's not a Chenery violation to affirm on that basis simply because the board opinion was not written the way perhaps I would have written it or the way Your Honor would have written it. But again, I'm not here to say that you can't remand it if you think that's appropriate. You certainly can't. But I think it's a little strong to say that the board actually considered the copying evidence. I'm just looking at appendix page 54. And looking at that, I mean, what the board says here is particularly succinct is the word I'll use. And when you see what it's saying here, it's hard for me to read these few sentences to say that the board did adequately consider the copying evidence. Judge Cunningham, all I can say is I think it matched the succinctness of the argument that Centripetal itself made, which I directed the court to on 4680. I mean, after all, we're only talking about an unelaborated string cite to a handful of transcript pages where the board had not been offered a more fulsome version of the record from which copying could be concluded. And where the arguments… The problem with that is you're talking about – you characterize it as just a string cite. You have a district court judge that concluded there was copying here. Now, the board's not bound by that. But it is persuasive. It's persuasive evidence. You have a fact finder that concluded that the copying here – and it was significant. And so, well, it turns out that fact finder had all kinds of infirmities. I grant you that. But it doesn't make it any less true that another adjudicator who looked at all this reached a strong conclusion about it. In a different context, the context of wilfulness, so issues like nexus and then the obviousness requirements. And it wasn't comparing it against the very strong prima facie case of obviousness that had already been found using the Buruganahalli prior art. So it's a very different context. Your Honor is right. Nothing in the prior vacated opinion in any way bound the board. And the argument that was made was simply – and this is – you know, the string cite is there. But the string cite is there in order to show why the district court reached the decision it did. What do I do with the following? I really don't like the board's opinion where it comes awfully close to doing something with regard to written description. Yes, it has a footnote that says, despite all the rhetoric in my opinion, I'm not actually deciding this case on the basis of written description. Boy, there's a lot in there that feels like it does not belong there and is not appropriate for the board to do. What do I do with that? I mean, I kind of think, in light of all this, this probably ought not to go back to the same judges if it goes back. But – because I really think they came very close on that written description thing to doing something that seems really not appropriate. So, Chief Judge Moore, I think I can explain what the board was doing, but I want to answer the question the way you've asked it. There isn't a written description in validation. It's an obviousness in validation. They're clear about that. If the court finds some infirmity with the obviousness analysis, then obviously remanding is appropriate. If the obviousness analysis is correct, then I think the thing to do is to write an opinion that says precisely what Your Honor just said. And say we remind the board that 112 considerations are not appropriate when doing a 103 analysis. We determine that the 103 analysis here satisfies substantial evidence review, and it's being affirmed on that basis. But we urge the board to be – to stay in its lane. Well, we review obviousness de novo, not for substantial evidence, but please continue. True, but the underlying findings, whether Buraganahalli, as prior art discloses the claimed invention, is a finding of fact, which would be reviewed for substantial evidence. Certainly the underlying conclusion, once you've made the findings as to whether there's a prima facie case of obviousness, whether there are secondary considerations, the weighing of all that together is reviewed de novo, but they haven't made an argument as to that. All of their arguments as to whether Buraganahalli discloses the claimed invention are substantial evidence findings, except for this effort to gin up a fictional written description finding, which simply doesn't exist. What I think the board was doing here was reacting to Centripetal's effort to read the claims more narrowly than they are actually recited. Centripetal was coming into the board and saying, no, no, no, these are narrow claims because they require applying the filtering criteria to encrypted packets. Nothing in the claim says that. Nothing in the spec actually says that. And that's what we had argued from the very beginning, which is that the claims read on not just applying rules to encrypted packets, but applying rules to unencrypted packets in the initial handshake and message and correlate. I'm sorry, Your Honor. If we decide to remand and send it back, do you have any objection to new APJs reviewing the record and dealing with anything that we say needs to be done on remand? We don't object to that, Your Honor. I would assume that would be up to the director through her statutory authority to determine which APJs will sit on a case. But ultimately, this court has the authority to do that. Okay, thank you, counsel. Mr. Clement, we'll allow them to go way over, so we'll give you some latitude for sure. Thank you, Your Honors. I think I'll just need a couple of minutes for a couple of points in rebuttal. First of all, just on the recusal issue, I do think it is worth recognizing that the PTO has now decided that this cannot happen to any other litigant. And so I don't know that you can really convert this to a class of one case. But I think in considering the appearance to any objective observer to what has happened to my client in this case, the fact that my client— You have to address first the government's argument that the appearance issue, the appearance provision in the regulations does not actually apply to the de minimis, that there's already been a determination effective in the de minimis that anyone who holds stock under this amount does not create an appearance of impropriety. If that's the right reading of the regulations, then the regulations are unconstitutional as applied here, and I think would be unconstitutional in other cases as well, with all due respect. Because appearance of impropriety is not just a regulatory standard. I mean, the due process clause gives a litigant the entitlement to an adjudicator who has the reality and the appearance of impartiality. Yes, but the appearance—there's been an effectively made decision that the appearance of impropriety is not implicated by this de minimis amount of simply a stockholding. That doesn't mean that there couldn't be other things like Judge Hughes gave this example of an email where, yay, I'm on a Cisco case, whatever. There could be other factors that could impact. But if the only factor being alleged is $1,000 of stock or something, that the regulation expressly covers that. Yeah, with all due respect, I don't think the executive branch gets the last word on that. I mean, for them to just say like—I mean, what if they said under these same regs that the threshold is $250,000? Then you make a constitutional attack on the regulation itself, not as applied. No, with all due respect, I don't think so because that would apply to anything under $250,000, and it actually would probably be constitutional as applied to plenty of individuals. But it wouldn't be constitutional as applied to larger holdings. I mean—and obviously Congress has made a much different judgment in 455, and even though 455 is not directly applicable, I think for this court, making a judgment about appearance of impropriety I think should take into account another coordinate branch of government that has a very different view of what less than $5,000 of stock does. And, of course, this court in the prior decision in Sisco v. Sentinel specifically said that with respect to Judge Morgan's holdings or his wife's holdings, to be more precise— Yeah, but what I'm worried about here is—I mean, the federal judiciary has 1,000 judges across the country. In terms of adjudicators within the Article I branch, you're talking about tens of thousands of individuals. So I just am worried that the government very consciously—they expressly say so in the regulation. We don't want there to be questions in people's mind based on job duties about whether they fall within this de minimis amount or not, so we are carefully curating this to apply to all government employees. Right, and the PTO has already made a judgment that that really isn't fair to apply to APJs because of the specific role that they take. So going forward, this is never going to happen to another— I mean, wait a minute. Did the director make a decision it's not fair, or did she make a decision that this has presented such a headache? We have enough APJs. Let's just avoid the headache in the future and not deal with this. So two things, Your Honor. First of all, she made the judgment, I think, based on this very case. Oh, I have no doubt about that. Well, and then the idea that there wouldn't be a remedy in this very case is contrary— But she told you there's no remedy in this case, actually. Her decision was in the future, you know what, to avoid people making such a fuss about this. We're going to just say we won't do this anymore, but it has—it is not wrong, and it has absolutely no impact on existing cases. She was really clear about that. Well, with respect, she wasn't clear about all of that. She didn't say this has no—there's nothing wrong here. I just want to, like, avoid the headache. Actually, she did. No, she said there are legitimate concerns that are raised in these cases. I mean, we can look at it, but she does not say— If she said there's—if she didn't say, if she did not conclude that this has no— why would she say this has no impact on existing or past cases? Why would she say that? Why would she have that if she actually— if you're telling me that in her executive order or whatever it's called, director's order, that she decided, yeah, this is wrong, this is wrong, what's wrong in light of this case? Why wouldn't she have done something about this case? So, with respect, I think that she didn't do something about this case because my client was singled out for unfavorable treatment, which explains why we're making this claim. I think it explains and, frankly, justifies the rhetoric in the brief, but we obviously disagree about that. But I think my client has been singled out and treated horribly, unfairly in this case and makes it a class of one case. I know that—and I'm supposed to be a zealous advocate for my clients, and if the rules of this court don't allow that, I think that's, frankly, a problem. Now, moving to— But, counsel, I think you can be a zealous advocate without using extended rhetoric. I don't think that those two things have to rise and fall together by any means. Well, you'll have to tell me what rhetoric really offended you because I think this brief was an excellent brief and consistent with the briefs that I filed in every regional circuit in the Supreme Court of the United States. I don't know. I've seen quite a few of your briefs. I've never seen one written like this, so there you have it. But anyway— Well, in not every case does my client get treated this shabbily by the federal government. I don't think that this is being fruitful any longer. Do you have anything further? Thank you, counsel. This case is taken under submission.